Filed 5/25/22  P. v. Mehtizada CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TEYMUR MEHTIZADA,<br><br>    Defendant and Appellant. | H049052<br>(Santa Clara County<br>Super. Ct. No. C1801582) |

The trial court granted Teymur Mehtizada probation for offenses involving his sale of vehicles with fraudulently reset odometers.  Mehtizada appeals the restitution requiring him to pay G.S. $7,000, the price G.S. paid for one such car, which G.S. testified was "not working."  Mehtizada maintains that he was entitled to an offset against the purchase price based on a Kelley Blue Book retail valuation for a vehicle of the same year, make, model, and actual mileage.  We conclude the trial court acted within its discretion in denying the offset.

## I.    BACKGROUND[1]

In April 2016, G.S. paid $7,000 to buy a 2008 Toyota Prius from Mehtizada.  The ad for the car described it as in good condition, with 68,000 miles.  Mehtizada was never

---

[1] Because Mehtizada pleaded guilty prior to trial, we derive the facts from the preliminary hearing transcript.

the licensed owner of the Prius, nor was he a licensed automobile dealer. He did not disclose to G.S. any issues with the car's odometer. As of the May 17, 2019, preliminary hearing, the Prius was "broken" and "not working."

In December 2018, M.M. paid $8,000 to buy a 2006 Honda Pilot from Mehtizada, who claimed to be its original owner. As with G.S., Mehtizada did not disclose to M.M. any issue with the Pilot's odometer, which reflected approximately 68,000 miles. But on his way home from the purchase, M.M. became suspicious when he noticed several dashboard lights were not functioning. As it turned out, a previous registered owner had sold the Pilot to a third party for $2,600 with over 200,000 miles. M.M. would not have purchased the vehicle had he known it actually had more than 200,000 miles on it.

Mehtizada was arrested after attempting to sell a third vehicle to investigators with the California Department of Motor Vehicles (DMV). He admitted to the investigators that he knew the odometer reading was incorrect.

On May 16, 2019, the Santa Clara County District Attorney filed the operative information accusing Mehtizada of two counts of grand theft of property over $950 (counts 1 and 3, Pen. Code, § 487, subd. (a)[2]) for the sales to M.M. and G.S., respectively, and one count each of attempted grand theft of property over $950 (count 2, §§ 664/487), acting as a dealer without a license (count 4, Veh. Code, § 11700), and unlawful attempted sale of a vehicle (count 5, Veh. Code, § 12120).

On November 25, 2019, by agreement, the prosecution amended the information to allege counts 6 and 7, violations of section 460, subdivision (b). The same day, Mehtizada pled no contest to these two counts.

On February 4, 2021, the court suspended imposition of sentence and placed Mehtizada on probation for a period of two years. As to restitution, the trial court ordered Mehtizada to pay $4,325 to M.M., representing the $8,000 purchase price paid by

---

[2] Unspecified statutory references are to the Penal Code.

M.M., less $3,675, which M.M. reported as the present value of the Honda Pilot at "the most recently determined odometer reading of 238,315."[3] The trial court ordered Mehtizada to pay $7,000 to G.S over Mehtizada's objection that the sum should be offset by $2,500 because "[t]he car was later valued at $2,500, utilizing a Blue Book search" according to his counsel.

Mehtizada timely appealed.

## II.    DISCUSSION

In ordering Mehtizada to disgorge the undiscounted purchase price to G.S. as victim restitution, the trial court relied upon the rehabilitative purpose of restitution as a condition of probation and deemed it appropriate to "remove that profit from [Mehtizada] and return it to [G.S.]" without offset. Mehtizada concedes that the prosecution met its initial burden of establishing a prima facie claim for $7,000, sufficient to shift to him the burden of rebutting G.S.'s claim. But he contends that his counsel's reference to a Kelley Blue Book valuation of $2,500 established his entitlement to a corresponding offset, absent rebuttal evidence of "the specific amount of money actually spent by [G.S.] . . . on repairs." On this record, we discern no error in the trial court's determination that the purchase price represented a legitimate and nonarbitrary measure of G.S.'s loss.

## A.    *Legal Standard*

The right of a crime victim to reimbursement for economic losses caused by a defendant's criminal conduct is guaranteed by the state constitution and implementing legislation. (Cal. Const., art. I, § 28, subd. (b)(13)(B); § 1202.4, subd. (f).) "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an

---

[3] We grant Mehtizada's unopposed motion to augment the record with M.M.'s statement of loss and the Kelley Blue Book information on which M.M. relied.

amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f).)

Independent of this mandate, the courts have long been vested with broad discretion to order restitution as a condition of probation under section 1203.1, subdivision (a)(3), "to foster rehabilitation and to protect public safety." (*People v. Anderson* (2010) 50 Cal.4th 19, 26 (*Anderson*); *People v. Martinez* (2017) 2 Cal.5th 1093, 1101-1102 [discretion to order restitution in probation cases is "broader than its power to order direct victim restitution under [§] 1202.4"].) As a condition of probation, a trial court may order restitution "even when the loss was not necessarily caused by the criminal conduct underlying the conviction." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121.) The court in fashioning such a probation condition is not "limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the . . . damages that might be recoverable in a civil action. [Citation.]" (*Ibid*.)

The process by which a trial court determines the extent of a victim's loss has long been treated as an abbreviated one: "[N]umerous courts have held that restitution hearings require fewer due process protections than civil hearings or criminal hearings of guilt. [Citations.]" (*People v. Giordano* (2007) 42 Cal.4th 644, 672, fn. 6 (*Giordano*).)[4] The prosecution on behalf of the victim bears the initial burden of presenting "an adequate factual basis for the claim." (*Id.* at p. 664.) The burden then shifts to the

_____

[4] "These cases were decided prior to the high court's decision in *Cunningham v. California* (2007) 549 U.S. 270 . . . , which required 'that, under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, . . . and established beyond a reasonable doubt. . . .' [Citations.]" (*Giordano*, *supra*, 42 Cal.4th at p. 672, fn. 6; see also *Hester v. United States* (2019) __ U.S. __ [139 S.Ct. 509, 510] (dis. opn. of Gorsuch, J.); cf. *People v. Pangan* (2013) 213 Cal.App.4th 574, 585 [rejecting Sixth Amendment challenge to restitution hearing process].) Mehtizada raises no due process or other constitutional challenge and in fact invokes the "relaxed" character of restitution hearings as a basis to rely on his counsel's unsupported assertion that the relevant Kelley Blue Book valuation was $2,500.

defendant to prove that the amount of restitution claimed by the victim exceeds the loss actually incurred. (*People v. Vournazos* (1988) 198 Cal.App.3d 948, 959; *People v. Millard* (2009) 175 Cal.App.4th 7, 26 (*Millard*).)

In reviewing a restitution order, we liberally construe the crime victim's right to restitution. (*People v. Stanley* (2012) 54 Cal.4th 734, 737 (*Stanley*).) Where the order of restitution is a condition of probation, we determine whether the order "is arbitrary or capricious or otherwise exceeds the bounds of reason under the circumstances. [Citations.]" (*Anderson*, *supra*, 50 Cal.4th at p. 32.) "[T]he question simply is whether the order is reasonably related to the crime of which the defendant was convicted or to future criminality." (*In re I.M.* (2005) 125 Cal.App.4th 1195, 1209.) Where the exercise of discretion depends on factual findings, "the ' "power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the trial court's findings.' [Citation.]" (*People v. Baker* (2005) 126 Cal.App.4th 463, 468-469.) " ' "[A]ll intendments and presumptions are indulged to support [a judgment] on matters as to which the record is silent, and error must be affirmatively shown." ' " (*Giordano*, *supra*, 42 Cal.4th at p. 666.)

**B.    *Analysis***

Having conceded that the prosecution had met its initial burden, it was Mehtizada's obligation prove that the amount of restitution claimed by G.S. exceeded the loss actually incurred. Having undertaken to do so by showing that the Prius was valuable to G.S., it was Mehtizada's burden to substantiate the actual value of the Prius, not G.S.'s burden to prove that it had none. The trial court acted within its discretion in implicitly determining that Mehtizada did not meet his burden.

On the record before it, the trial court acted within its discretion by declining to rely on the Kelley Blue Book valuation of a car that, unlike G.S.'s, was generally marketable. To be sure, the Kelley Blue Book has been acknowledged as "a widely accepted source" for "the retail value" of a used car. (*Martinez v. Enterprise Rent-A-Car*

5

*Co.* (2004) 119 Cal.App.4th 46, 56.)  But Mehtizada's resort to M.M.'s inclusion of Kelley Blue Book reports in his statement of loss for the Honda Pilot confirms that Blue Book valuations apply only to vehicles in at least "fair condition," i.e., "still in safe running condition and [having] a clean title history."  Mehtizada did nothing to establish that G.S.'s Prius was in a condition that the Kelley Blue Book would recognize as marketable.  G.S., on the other hand, testified that the car was "broken" and "not working."  Moreover, DMV investigators established that its title history was less than "clean."  M.M.'s apparently unsolicited concession that his Honda Pilot was appropriately valued by reference to the Kelley Blue Book did not entitle Mehtizada to force the same upon G.S.  (Cf. Evid. Code, § 810 [owner of property competent to value the property].)

Mehtizada argues that comparing the present value of the Prius to the past purchase price is improper because G.S. may have derived value from the Prius in the interim.  But this argument is, on the present record, speculative.

Mehtizada first contends that the prosecution must establish that G.S. incurred repair costs to justify a restitution award of the full purchase price.  In support, Mehtizada relies on inapposite authorities interpreting subdivision (f)(3)(A) of section 1202.4, rather than the trial court's broader authority under section 1203.1.  (*In re Dina V.* (2007) 151 Cal.App.4th 486; *Stanley*, *supra*, 54 Cal.4th 734; *In re Alexander A.* (2011) 192 Cal.App.4th 847.)  Mehtizada misreads these cases, which specifically affirmed that a trial court in valuing a stolen or damaged vehicle is not limited to its replacement value, but may award restitution at a higher *projected* estimate of costs to repair it.  (*In re Dina V.*, *supra*, 151 Cal.App.4th at p. 489 [restitution ordered as a condition of juvenile probation not limited by replacement value]; *Stanley*, *supra*, 54 Cal.4th at p. 737 [affirming award of restitution in the amount of $ 2,812.94, based on body shop's written estimate of repair cost, rather than purchase price of $950]; *In re Alexander A.*, *supra*, 192 Cal.App.4th at p. 856 [restitution not limited by replacement value].)  Contrary to

Mehtizada's contention, none of these authorities required proof that the victims had actually incurred repair expenses as a condition of restitution.[5]

The authorities on which Mehtizada next relies to support the proposition that awarding G.S. the full amount he paid for the Prius results in an improper "windfall" are inapposite. In both cases, the disputed issue related to the rationality of the trial court's methodology, not in the bare excess of the resulting calculation.

In *People v. Chappelone* (2010) 183 Cal.App.4th 1159 (*Chappelone*), the court acknowledged that imprecision alone does not constitute an abuse of discretion, so long as the methodology employed by the court is rational. (*Id.* at pp. 1175-1176.) There, the trial court abused its discretion by relying on the original retail value to calculate restitution for merchandise that was "largely damaged and unsellable" at the time it was stolen from a retailer. (*Ibid.*) The instant case represents the inverse of *Chappelone*: Mehtizada's offense consisted not of stealing merchandise that could never be marketed at all, but in fraudulently inducing G.S. to pay the retail price for a distressed car the trial court impliedly found G.S. would not otherwise have purchased and that G.S. could himself not market. Mehtizada's reliance on *Millard* is similarly misplaced.

In *Millard*, the court affirmed an order for restitution in the amount accepted by the victim's medical providers as payment in full, as opposed to the amount the providers had initially billed the victim's insurer: "To 'fully reimburse' the victim for medical expenses means to reimburse him or her for all out-of-pocket expenses actually paid by the victim or others on the victim's behalf (e.g., the victim's insurance company)." (*Millard*, *supra*, 175 Cal.App.4th 7, 27.)

Here, the methodology employed by the trial court was to set restitution at the purchase price each victim actually paid to Mehtizada, less the value, if any, the record

---

[5] To the contrary, nothing in the courts' reliance on repair estimates appears to foreclose the victims from later electing to use their higher value cost-of-repair restitution to purchase a less expensive replacement vehicle, pocketing the difference.

7

established the victim retained as of the time of claim. No defect in the trial court's methodology is apparent. As in *Millard*, there is no question as to what G.S. actually paid as a result of Mehtizada's offense. Like the retailer in *Chappelone*, Mehtizada failed to justify reliance on a theoretical retail value untethered to the actual condition of the property.

Mehtizada finally contends that the Prius had some non-negligible value if only as scrap, or that G.S. surely realized some value from the Prius for the years that he owned it. But Mehtizada made neither of these arguments in the trial court and no effort to quantify such value. We therefore will not conclude that the trial court erred in not intuiting alternative valuations that Mehitizada did not ask it to undertake. " ' "If the circumstances reasonably justify the [trial court's] findings," the judgment may not be overturned when the circumstances might also reasonably support a contrary finding. [Citation.] We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact. [Citation.]' [Citation.]" (*Millard*, *supra*, 175 Cal.App.4th at p. 26.)

### III.    DISPOSITION

The judgment is affirmed.

_____
LIE, J.

WE CONCUR:

_____
GREENWOOD, P.J.

_____
GROVER, J.

*People v. Mehtizada*
**H049052**